# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DAVID AUSTIN LINDSEY,

    Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION,

    Defendant.

Civil Action No. 16-2032 (CKK)

## MEMORANDUM OPINION AND ORDER
(September 20, 2017)

This Freedom of Information Act ("FOIA") matter concerns Plaintiff's request to Defendant Federal Bureau of Investigation ("FBI") for the disclosure of "all FBI records of contact between Imad Hage and U.S. Government officials." Hardy Decl., Ex. A. According to Plaintiff, his FOIA request stems from "information that was reported in several national news articles . . . that a Lebanese national, identified as Mr. Imad Hage, had attempted to serve as a diplomatic intermediary . . . between the United States and Iraq." Lindsey Decl. ¶ 4. Plaintiff further contends that these "news reports indicate that the FBI conducted an investigation of Mr. Hage, following [an] incident at Dulles Airport in [January 2003], and that this FBI investigation included FBI contacts with U.S. officials involved with Mr. Hage's diplomatic efforts." *Id.*

Plaintiff submitted his FOIA request on May 18, 2016. Hardy Decl. ¶ 6. Defendant denied that request on June 23, 2016, issuing a privacy *Glomar* response stating that "absent express authorization and consent from the third-party individual whose records are sought, the FBI can neither confirm nor deny the existence of any records responsive

1

to plaintiff[']s request, and informed plaintiff that if such records were to exist, they would be exempt from disclosure pursuant to FOIA Exemptions (b)(6) and (b)(7)(C)." *Id*. ¶ 9. Plaintiff's administrative appeal of that decision was denied on September 5, 2016, leading to the present action.

Pending before the Court are the parties' cross-motions for summary judgment. ECF Nos. 10, 11.[1] Because the Court finds that Defendant's affidavit is not sufficient to warrant summary judgment on the basis of its *Glomar* response, the Court shall deny both motions without prejudice. In subsequent proceedings, Defendant may submit an amended affidavit, or choose to pierce the *Glomar* veil, and conduct a search for relevant, non-exempt records that are responsive to Plaintiff's FOIA request.

## I. LEGAL STANDARD

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose,* 425 U.S. 352, 361 (1976) (citation omitted). Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests could be harmed by release of certain types of information." *FBI v. Abramson,*

---

[1] The Court's consideration has focused on the following documents:

- Mem. of P&A in Supp. of Def.'s Mot. for Summ. J., ECF No. 10-1 ("Def.'s Mem.");
- Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., and in Supp. of Pl.'s Mot. for Summ. J., ECF Nos. 11, 12 ("Pl.'s Mem.");
- Def.'s Reply in Supp. of Def.'s Mot. for Summ. J. and Opp'n to Pl.'s Mot. for Summ. J., ECF Nos. 13, 14 ("Def.'s Reply Mem.");
- Pl.'s Reply Mem. in Supp. of Pl.'s Mot. for Summ. J., ECF No. 15 ("Pl.'s Reply Mem.");
- Decl. of David M. Hardy, ECF No. 10-3 ("Hardy Decl.");
- Decl. of David Austin Lindsey, ECF No. 11-2 ("Lindsey Decl.").

456 U.S. 615, 621 (1982). To that end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions." *Milner v. Dep't of Navy,* 562 U.S. 562, 562 (2011). Ultimately, "disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose,* 425 U.S. 352, 361 (1976). For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed." *Milner,* 562 U.S. at 565 (citations omitted).

When presented with a motion for summary judgment in this context, the district court must conduct a "de novo" review of the record, which requires the court to "ascertain whether the agency has sustained its burden of demonstrating the documents requested . . . are exempt from disclosure under the FOIA." *Multi Ag Media LLC v. U.S. Dep't of Agriculture,* 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted). The burden is on the agency to justify its response to the plaintiff's request. 5 U.S.C. § 552(a)(4)(B). "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Multi Ag Media,* 515 F.3d at 1227 (citation omitted). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. U.S. Dep't of Defense,* 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. U.S. Dep't of*

*State,* 641 F.3d 504, 509 (D.C. Cir. 2011) (citation omitted). Summary judgment is proper when the pleadings, the discovery materials on file, and any affidavits or declarations "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

An agency also has the burden of detailing "what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force,* 566 F.2d 242, 261 (D.C. Cir. 1977). Any nonexempt information that is reasonably segregable from the requested records must be disclosed. *Oglesby v. U.S. Dep't of the Army,* 79 F.3d 1172, 1176 (D.C. Cir. 1996).

## II. DISCUSSION

### A. The Relevant Law Under FOIA

In this case, the FBI issued a *Glomar* response, indicating that it could neither confirm nor deny the existence of any documents responsive to Plaintiff's FOIA request. This type of response is appropriate in "certain cases, [where] merely acknowledging the existence of responsive records would itself cause harm cognizable under a FOIA exception." *People for the Ethical Treatment of Animals v. NIH*, 745 F.3d 535, 540 (D.C. Cir. 2014) ("*PETA*") (internal quotation marks and original alteration omitted). "[T]o the extent the circumstances justify a *Glomar* response, the agency need not conduct any search for responsive documents or perform any analysis to identify segregable portions of such documents." *Id*.

A *Glomar* response "is proper if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). "When addressing an agency's *Glomar* response, courts must accord 'substantial weight'

to agency determinations." *Sea Shepherd Conservation Soc'y v. IRS*, 208 F. Supp. 3d 58, 89 (D.D.C. 2016) (citing *Gardels v. CIA*, 689 F.2d 1100, 1104 (D.C. Cir. 1982)). Consequently, in such cases, "courts may grant summary judgment on the basis of agency affidavits that contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Elec. Privacy Info. Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012) (internal quotation marks omitted). "The supporting affidavit must justify the *Glomar* response based on general exemption review standards established in non-*Glomar* cases." *Id.* (internal quotation marks omitted). Ultimately, "an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* (citation omitted).

The FBI's *Glomar* response is predicated on FOIA Exemptions 6 and 7(C), and stems from the FBI's "long standing policy . . . to neither confirm nor deny the existence of records . . . where a requester seeks access to information regarding a third party but fails to provide a privacy waiver from the third party or proof of death of that third party." Def.'s Mem. at 9. Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Exemption 6 is not limited to "a narrow class of files containing only a discrete kind of personal information[,]" but was "intended to cover detailed Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982). Fundamentally, "Exemption 6 is designed to protect personal information in public records." *Multi Ag Media*, 515 F.3d at 1228 (internal quotation marks omitted). Assuming that the records at issue are of the type that fall within the ambit of Exemption 6, "the court must then determine whether their disclosure would constitute a clearly unwarranted invasion of personal privacy, which requires balancing the privacy interest that would be compromised by disclosure against any public interest in the requested information." *Wisdom v. U.S. Tr. Program*, --- F. Supp. 3d ---, No. CV 15-1821 (JEB), 2017 WL 3842117, at *8 (D.D.C. Sept. 1, 2017) (internal quotation marks omitted). In order for the exemption to apply, the Court must determine that the "disclosure of the files would compromise a substantial, as opposed to *de minimis,* privacy interest, because if no significant privacy interest is implicated FOIA demands disclosure." *Multi Ag Media*, 515 F.3d at 1229 (internal quotation marks and alterations omitted). On the other side of the equation, "the only relevant public interest in disclosure to be weighed . . . is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (internal quotation marks and alterations omitted).

The same balancing test applies to Exemption 7(C). However, "Exemption 7(C) is more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 n.5 (D.C. Cir.

2015) (internal quotation marks omitted). That is because "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects." *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 756 (1989). "First, whereas Exemption 6 requires that the invasion of privacy be 'clearly unwarranted,' the adverb 'clearly' is omitted from Exemption 7(C). . . . Second, whereas Exemption 6 refers to disclosures that 'would constitute' an invasion of privacy, Exemption 7(C) encompasses any disclosure that 'could reasonably be expected to constitute' such an invasion." *Id*. In the context of Exemption 7(C), this circuit has recognized that "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity." *Stern v. FBI*, 737 F.2d 84, 91 (D.C. Cir. 1984).

Furthermore, to withhold documents pursuant to Exemption 7(C), the agency must make a threshold showing that the "the records were compiled for a law enforcement purpose." *Pinson v. U.S. Dep't of Justice*, --- F. Supp. 3d ---, No. CV 12-1872 (RC), 2017 WL 1247773, at *13 (D.D.C. Mar. 29, 2017) (internal quotation marks omitted). "A court's review of this threshold question is 'necessarily deferential,' but is 'not vacuous.'" *Id*. (citing *Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982)). Not every document compiled by a law enforcement agency, such as the FBI, is compiled for a law enforcement purpose. *Vymetalik v. FBI*, 785 F.2d 1090, 1095 (D.C. Cir. 1986) ("FBI records are not law enforcement records simply by virtue of the function that the FBI serves"). "To establish a law enforcement purpose, [the FBI's] declarations must establish (1) a rational nexus between the investigation and one of the agency's law enforcement duties; and (2) a connection between an individual or incident and a possible security risk or violation of

federal law." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003) (internal quotation marks omitted).

**B. Application to Plaintiff's FOIA Request**

The Court finds that the affidavit submitted by Defendant in support of its *Glomar* response rests on a flawed interpretation of Plaintiff's FOIA request, and does not respond to certain information in the record suggesting that the third-party privacy rights at issue have been substantially diminished by public acknowledgments of the allegedly private facts.

As an initial matter, Defendant appears to have drawn a narrow reading of Plaintiff's FOIA request, which seeks the disclosure of "all FBI records of contact between Imad Hage and U.S. government officials." Hardy Decl. ¶ 5 (citing Ex. A). Defendant contends that Plaintiff stated in correspondence and administrative filings that his request pertained only to "alleged back channel negotiations" between Mr. Hage and government officials. Def.'s Reply Mem. at 2. For example, in his appeal letter, Plaintiff stated that his "request sought records from the FBI concerning contact between Imad Hage and U.S. government officials related to back channel Iraqi peace proposals." Hardy Decl., Ex. F., at 3. Apparently, based on this and similar statements from Plaintiff, Defendant has taken the position that it need not disclose records to the extent they relate to a 2003 incident involving Mr. Hage at Dulles Airport. *Id*. at 7 n.4 ("The U.S. government has had [an] official, public interaction with Mr. Hage regarding a criminal complaint filed against him in 2003. The charges were dismissed in 2004. That interaction has no bearing on this FOIA litigation.").

8

Defendant's position is contrary to the law of this circuit. An agency must "construe a FOIA request liberally." *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). And a FOIA requestor does not abandon the full scope of his request merely by showing a heightened interest in some documents over others. *LaCedra v. Exec. Office for U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003) ("The drafter of a FOIA request might reasonably seek all of a certain set of documents while nonetheless evincing a heightened interest in a specific subset thereof. We think it improbable, however, that a person who wanted only the subset would draft a request that . . . first asks for the full set."). Here, Plaintiff has plainly asked for "FBI records of contact between Imad Hage and U.S. government officials," without qualification as to the types of contact. True, the record indicates that Plaintiff has a particular interest in diplomatic contacts, but even on this point, Defendant's position is dubious. Defendant seeks to distinguish contacts related to the 2003 Dulles Airport incident from the diplomatic incidents in which Plaintiff has shown a heightened interest. But from Plaintiff's perspective, which is supported by citations to credible news media, the Dulles Airport incident was part-and-parcel of the alleged diplomatic contacts. Lindsey Decl. ¶ 4 ("These news reports indicate that the FBI conducted an investigation of Mr. Hage, following a January 28, 200[3] incident at Dulles Airport, and that this FBI investigation included contacts with U.S. officials involved with Mr. Hage's diplomatic efforts"); *id.*, Ex. B, James Risen and Eric Lichtblau, *A Region Inflamed: Back Channels; U.S. Opens Firearms Charge Against Iraq-U.S. Contact*, N.Y. TIMES, Dec. 11, 2003 ("Mr. Hage's lawyer in New York, said the timing made it appear that the charges were 'an attempt to discredit my client' because of his role as a contact with Iraq."). The Court offers no view on whether

9

or not the Dulles Airport incident was, in fact, related to the alleged diplomatic contacts. But Defendant cannot summarily conclude that contacts related to the Dulles Airport incident categorically fall outside of Plaintiff's FOIA request, when the plain language of that request seeks records of *all* contacts with U.S. officials.

Defendant's reasoning in support of its *Glomar* response suffers from a similar, narrow reading of Plaintiff's FOIA request. As noted above, a *Glomar* response is appropriate where the disclosure of the very fact that documents do or do not exist would trigger a FOIA exemption. Here, Defendant premised its *Glomar* response on Mr. Hage's "substantial privacy interest in not being associated with FBI records." Hardy Decl. ¶ 17. Defendant found it noteworthy that "while Mr. Hage has publicly stated [that] he was involved with alleged peace proposals, Plaintiff has not provided evidence that Mr. Hage publicly stated that he had contact with the FBI regarding the proposal[s]." *Id*. ¶ 19. Even more important, in Defendant's view, is the fact that "Plaintiff has not shown that *the FBI* has ever officially acknowledged any interaction between it – or any other Government agency/official – and Mr. Hage." *Id*. (emphasis in original).

This line of analysis requires some unpacking. First, it misconstrues the significance of the "public acknowledgment" doctrine to this case. Under that doctrine, if an "agency has officially acknowledged the existence of [a] record, the agency can no longer use a *Glomar* response, and instead must either: (1) disclose the record to the requester or (2) establish that its contents are exempt from disclosure and that such exemption has not been waived." *Moore v. CIA*, 666 F.3d 1330, 1333 (D.C. Cir. 2011). Here, there may be records fitting that description, given Defendant's acknowledgement that the "government has had [an] official, public interaction with Mr. Hage regarding a

10

criminal complaint filed against him in 2003." Hardy Decl., at 7 n.4. The record is not sufficiently clear on this point, given Defendant's decision to exclude that "official, public interaction" from the scope of its FOIA response.

Regardless, the fact that the *government* has not acknowledged a potentially personal piece of information, does not mean that the *third-party's* acknowledgment of that information has no bearing on the private-public interest balancing test underlying the FOIA exemptions at issue. Rather, this circuit has held that the third-party's acknowledgment has a substantial effect on that balance. *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1092 (D.C. Cir. 2014) ("DeLay's obvious privacy interest in keeping secret the fact that he was the subject of an FBI investigation was diminished by his well-publicized announcement of that very fact."); *Nation Magazine*, 71 F.3d at 896 (D.C. Cir. 1995) ("Perot's decision to bring information connecting himself with such efforts into the public domain differentiates his privacy interest from the interest of unnamed *SafeCard* witnesses who did not voluntarily divulge their identities; these public disclosures effectively waive Perot's right to redaction of his name from documents on events that he has publicly discussed.").

Plaintiff's original FOIA request referenced a CNN video interview of Mr. Hage in which he stated that there were "reporters who got access to memos and documentations and e-mails passed from me to people at the Pentagon and/or Richard Perle [a member of the Defense Policy Board, an independent group that advises Defense Secretary Donald Rumsfeld]." *Intermediary: Iraq talks deserved a chance*, CNN (Nov. 7, 2003), http://www.cnn.com/2003/US/11/07/ cnna.hage/. Consequently, there is record evidence that Mr. Hage has publicly acknowledged contacts with United States officials.

11

Furthermore, the FOIA request cited a *New York Times* article in which Mr. Hage appears to have acknowledged that FBI agents detained him at Dulles Airport in January 2003. James Risen, *The Struggle for Iraq: Diplomacy; Iraq Said to Have Tried to Reach Last-Minute Deal to Avert War*, N.Y. TIMES (Nov. 6, 2003), http://www.nytimes.com/2003/11/06/world/struggle-for-iraq-diplomacy-iraq-said-have-tried-reach-last-minute-deal-avert.html?mcubz=1 ("In January he had been briefly detained by the F.B.I. at Dulles Airport in Washington when a handgun was found in his checked luggage. [Mr. Hage] said he did not believe it was a security violation because it was not in his carry-on luggage, and the authorities allowed him to leave after a few hours."). And as already discussed, Defendant has conceded that the government had an "official, public interaction with Mr. Hage" in 2003.

The ultimate question with respect to Defendant's *Glomar* response is whether the disclosure of the fact that there are documents in FBI's possession that are responsive to Plaintiff's FOIA request would itself constitute an invasion of privacy sufficient to trigger Exemption 6 or 7(C). As already demonstrated, there is substantial factual matter in the record suggesting that Mr. Hage has already publicly acknowledged that he, to some degree, had interactions with the FBI, and that he had diplomatic contacts with U.S. officials. In response, Defendant seems to rest on the fact that "Plaintiff has not provided evidence that Mr. Hage publicly stated that he had contact with the FBI regarding the [alleged diplomatic] proposals." Hardy Decl. ¶ 19. But that draws too fine a line. First, Plaintiff's request concerns any contacts with U.S. officials, whether they are related to diplomatic proposals or not. Second, the request does not necessarily seek documents regarding contacts with the FBI. Even if Mr. Hage did not have direct contacts with the

FBI regarding his alleged diplomatic entreaties to U.S. officials, records of Mr. Hage's alleged efforts may still be in the possession of the FBI, perhaps collected as part of the "official, public interaction" that the FBI had with Mr. Hage. How the disclosure of such documents would impose upon Mr. Hage's privacy interests—given (i) his apparent public acknowledgement that he had an interaction with the FBI and diplomatic contacts with U.S. officials, and (ii) Defendant's concession that the "U.S. government has had [an] official, public interaction with Mr. Hage regarding a criminal complaint"—is a positon on which Defendant must substantially elaborate if it intends to continue to pursue a categorical *Glomar* response in this matter.

Nor can the Court simply conclude that there is *no* public interest in the subject-matter of Plaintiff's FOIA request, given the substantial record evidence of media reports from credible news agencies regarding Mr. Hage's alleged diplomatic efforts. Even a modicum of public interest may suffice to warrant disclosure, if public acknowledgments by Mr. Hage have vitiated the claimed privacy interests in this matter. Accordingly, the Court shall provide Defendant an opportunity to either supplement its affidavit in support of its *Glomar* response, or to otherwise proceed in a manner consistent with its obligations under FOIA (e.g., by piercing the *Glomar* veil and conducting a search for relevant, non-exempt materials).

### III. CONCLUSION AND ORDER

For the foregoing reasons, Defendant's [10] Motion for Summary Judgment and Plaintiff's [11] Motion for Summary Judgment are **DENIED WITHOUT PREJUDICE**. The parties shall proceed in a manner consistent with this Memorandum Opinion, and shall

file a Joint Status Report by **NOVEMBER 17, 2017**, updating the Court on how they intend to proceed, and proposing a schedule for such further proceedings.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge